UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROSIE L. BROOKS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>GIANT INTERACTIVE GROUP, INC., MERRILL LYNCH & CO. and UBS INVESTMENT BANK,<br><br>Defendants. | **CIVIL ACTION NO. 07-11423**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Rosie L. Brooks ("Plaintiff"), alleges the following based upon the investigation by Plaintiff's counsel, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Giant Interactive Group, Inc. ("Giant Interactive" or the "Company"), securities analysts' reports and advisories about the Company, and information readily available on the Internet, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION AND OVERVIEW**

1.  This is a federal class action on behalf of purchasers of the securities of Giant Interactive, who purchased or otherwise acquired Giant Interactive's securities pursuant or traceable to the Company's November 1, 2007 Initial Public Offering (the "IPO" or the

1

"Offering") through November 19, 2007, seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

2. Giant Interactive, formerly Giant Network Technology Limited, is an online game developer and operator. The Company focuses on massively multiplayer online ("MMO") games that are played through networked game servers, in which a number of players are able to simultaneously connect and interact. Giant Interactive operates three MMO games, all of which it has developed internally: ZT Online, ZT Online pay-to-play ("PTP") and Giant Online.

3. Within MMO games, a "gold farmer" is a general term for a player who attempts to acquire (or "farm") items of value within the online game, usually by exploiting repetitive elements of the game's mechanics. This is usually accomplished by repeatedly carrying out in-game actions to maximize gains, either manually, by utilizing a computer program, or by using an automatic clicker. "Gold farming" entails the harvesting of gold or other virtual game items of value, which are then sold to other game players for real-world currency.

4. On or about November 1, 2007, the Company conducted its IPO. In connection with its IPO, the Company filed a Registration Statement and Prospectus (collectively referred to as the "Registration Statement") with the SEC. The IPO was a financial success for the Company and certain selling shareholders, as they raised an initial $883 million by selling over 57 million American Depository Shares ("ADSs" or "shares") to investors at a price of $15.50 per share. Subsequently, on November 5, 2007, the Company announced that it had sold an additional 8.5 million shares pursuant to the underwriters' over-allotment option. After inclusion of the over-allotment shares, the aggregate gross proceeds from the Company's IPO and the placement of shares to a third party at the IPO price was approximately $1.04 billion.

5. On November 19, 2007, after the close of the market, Giant Interactive shocked investors when it announced its financial and operational results for the third quarter of 2007 (ended September 30, 2007). Among other things, the Company reported that its average concurrent user ("ACU") count for the third quarter had decreased over 6.5 percent from the second quarter of 2007, and that its peak concurrent user ("PCU") count for the third quarter had decreased 17.2 percent from the second quarter of 2007. On a subsequent conference call, Company representatives attributed both the ACU and PCU declines to a major rule change in the Company's ZT Online game, a change that the Company had instituted months before its IPO.

6. On this news, the Company's shares declined $3.78 per share, or over 25.4 percent, to close on November 20, 2007 at $11.10 per share, on unusually heavy trading volume. This closing price on November 20, 2007 represented a cumulative loss of $4.40 per share, or over 28 percent, from the value of the Company's shares at the time of its IPO just weeks earlier.

7. The Complaint alleges that, in connection with the Company's IPO, defendants failed to disclose or indicate the following: (1) that the Company's ACU and PCU figures as presented in the Registration Statement included game users engaged in "gold farming" activities; (2) that, prior to the IPO, the Company had implemented a major rule change for ZT Online which was designed to discourage such "gold farming" activities; and (3) that this rule change would materially reduce the Company's ACU and PCU numbers in subsequent quarters.

8. As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class Members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

9.      The claims asserted herein arise under and pursuant to Sections 11 and 12(a)(2) of the Securities Act (15 U.S.C. §§ 77k and 77o).

10.     This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v).

11.     Venue is proper in this Judicial District pursuant to Section 22 of the Securities Act.  Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District.  Additionally, the Company's securities are actively traded in this Judicial District, and certain defendants are located in this Judicial District.

12.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

13.     Plaintiff, Rosie L. Brooks, as set forth in the accompanying certification, incorporated by reference herein, purchased Giant Interactive's securities at artificially inflated prices during the Class Period and has been damaged thereby.

14.     Defendant Giant Interactive is incorporated in the Cayman Islands, and maintains its principal executive offices at 2/F No. 29 Building, 396 Guilin Road, Shanghai, the People's Republic of China.

15.     Defendants UBS Investment Bank ("UBS") was a joint global coordinator and joint book runner for the Company's IPO.

16. Merrill Lynch & Co. ("Merrill Lynch") was a joint global coordinator and joint book runner for the Company's IPO.

17. Defendants UBS and Merrill Lynch are collectively referred to hereinafter as the "Underwriter Defendants." The Underwriter Defendants served as financial advisors to the Company, and assisted in the preparation and distribution of the Company's IPO materials and securities.

## SUBSTANTIVE ALLEGATIONS

### Background

18. Giant Interactive, formerly Giant Network Technology Limited, is an online game developer and operator. The Company focuses on massively multiplayer online ("MMO") games that are played through networked game servers, in which a number of players are able to simultaneously connect and interact. Giant Interactive operates three MMO games, all of which it has developed internally: ZT Online, ZT Online pay-to-play ("PTP") and Giant Online.

19. Within MMO games, a "gold farmer" is a general term for a player who attempts to acquire (or "farm") items of value within the online game, usually by exploiting repetitive elements of the game's mechanics. This is usually accomplished by repeatedly carrying out in-game actions to maximize gains, either manually, by utilizing a computer program, or by using an automatic clicker. "Gold farming" entails the harvesting of gold or other virtual game items of value, which are then sold to other game players for real-world currency.

20. On or about November 1, 2007, the Company conducted its IPO. In connection with its IPO, the Company filed a Registration Statement and Prospectus (collectively referred to as the "Registration Statement") with the SEC. The IPO was a financial success for the

Company and certain selling shareholders, as they raised an initial $883 million by selling over 57 million ADSs to investors at a price of $15.50 per share.

21. Then on November 5, 2007, the Company issued a press release entitled "Giant Interactive Group Inc. Announced Exercise of Over-Allotment Option." Therein, the Company, in relevant part, stated:

> Giant Interactive Group Inc. ("Giant") (NYSE: GA), one of China's leading online game developers and operators in terms of revenues, announced today that *the underwriters of its initial public offering exercised their over-allotment option to purchase 8,579,613 shares from the selling shareholder at $15.50 per share*. The option was granted in connection with the company's initial public offering (the "IPO"), which priced on October 31, 2007.
>
> *After inclusion of the over-allotment shares, the aggregate gross proceeds from the sale of ADSs in the IPO and the placement of ordinary shares to a third party at the IPO price were approximately $1.04 billion.* Giant will not receive any of the proceeds from the sales of the ADSs by the selling shareholder in the IPO, including pursuant to the exercise of the over-allotment option.
>
> Merrill Lynch, Pierce, Fenner & Smith Incorporated and UBS Investment Bank acted as the joint global coordinators and joint book runners for the offering. UBS Investment Bank acted as stabilization agent. J.P. Morgan Securities Inc., CIBC World Markets Corp., Piper Jaffray & Co. and, Susquehanna Financial Group LLLP were co-managers. [Emphasis added.]

**Materially False and Misleading
Statements Made in the Registration Statement**

22. Regarding the Company's strong growth in average revenues per user ("ARPU") and in "active paying players," the Registration Statement, in relevant part, stated:

> We believe that the high playability, interactivity and community-oriented nature of our games, together with their large active player bases, have resulted in a strong growth in the number of our paying players and our average revenues per user, or ARPU. As a result, ZT Online's quarterly active paying players and ARPU

6

> achieved compound quarterly growth rates of 54.2% and 28.6%, respectively, from the quarter ended March 31, 2006 through the quarter ended June 30, 2007. ZT Online had 143,110 and 1,247,791 quarterly active paying players in the quarters ended March 31, 2006 and June 30, 2007, respectively. In the three months ended September 30, 2007, ZT Online had 1,317,673 quarterly active paying players. ZT Online had ARPU of RMB84 and RMB320 in the quarters ended March 31, 2006 and March 31, 2007, respectively. In the quarter ended June 30, 2007, ZT Online's ARPU decreased to RMB295.

23. Regarding one of the Company's "strengths," and in particular its ZT Online game, the Registration Statement, in relevant part, stated:

> **Our Strengths**
>
> *A Leader in the Online Game Market in China*
>
> We are a leading developer and operator of online games in China as measured by revenues. According to IDC, we were ranked as the fifth largest online game company in China in terms of revenues in 2006. Since its commercial launch in 2006, ZT Online has become the most popular online game in China according to IDC. ZT Online's popularity has enabled us to attract a large player base, which we believe enriches players' interactive game experience and stimulates the purchase of virtual products and services by our players. ZT Online achieved quarterly peak concurrent users of 755,438, quarterly average concurrent users of 395,397 and quarterly active paying players of 786,532 within the first year of its commercial launch. In the quarter ended June 30, 2007, ZT Online had achieved quarterly peak concurrent users of 1,072,595, quarterly average concurrent users of 515,178 and quarterly active paying players of 1,247,791.

24. The statements contained in ¶¶ 22 and 23 were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that the Company's ACU and PCU figures as presented in the Registration Statement included game users engaged in "gold farming" activities; (2) that, prior to the IPO, the Company had implemented a major rule change for ZT Online which was designed to discourage such "gold farming" activities; and (3) that this rule change would materially reduce the Company's ACU

7

and PCU numbers in subsequent quarters.

## The Truth Begins to Emerge

25. On November 19, 2007, after the close of the market, Giant Interactive issued a press release entitled "Giant Interactive Group Inc. Announces Third Quarter 2007 Results." Therein, the Company, in relevant part, stated:

> Giant Interactive Group Inc. (NYSE: GA), one of China's leading online game developers and operators in terms of revenues, announced today its unaudited financial results for the third quarter ended September 30, 2007.
>
> Third Quarter 2007 Highlights:
>
> * * *
>
> - *Average Concurrent User ("ACU") for ZT Online in the third quarter of 2007 was 481,000, an increase of 77.6% from the third quarter of 2006 and a decrease of 6.6% from the second quarter of 2007.*
>
> - *Peak Concurrent User ("PCU") for ZT Online in the third quarter of 2007 was 888,000, an increase of 59.2% from the third quarter of 2006 and a decrease of 17.2% from the second quarter of 2007.*
>
> * * *
>
> Online game net revenues for the third quarter of 2007 were RMB404.0 million (US$53.9 million), an increase of 9.7% from RMB368.4 million in the second quarter of 2007, and an increase of 163.4% from RMB153.4 million in the third quarter of 2006. The significant year-over-year increase in online game net revenues was mainly due to the strong performance achieved by ZT Online, especially from our recent expansion pack release in the third quarter of 2007. Although **both ACU and PCU had a slight decrease in the third quarter of 2007 as compared to those in the second quarter of 2007 due to the game rule change instituted by us to discourage "gold farming" activities in June of 2007**, we believe that the recent expansion pack Zhong Zhi Cheng Cheng ("ZZCC") released in July has enhanced our player interactivity and loyalty to the game, and helped drive APA and ARPU up by 5.6% and 3.3%, respectively, from the second quarter

2007. In addition, the ZZCC expansion pack has led to improved ACU and PCU during the course of the third quarter 2007.

* * *

Initial Public Offering-On November 1, 2007, Giant Interactive Group successfully listed on the New York Stock Exchange in an initial public offering of 57,197,423 shares and a new issuance of 1,612,903 shares to a third-party cornerstone investor. After inclusion of an additional 8,579,613 ADSs, representing the over-allotment shares, the total offering size was approximately US$1.04 billion. [Emphasis added.]

26.     Then on November 20, 2007, before the market opened, Giant Interactive held a conference call with investors and analysts to discuss the Company's financial and operational results. During this conference call, Company representatives, in relevant part, stated:

> ERIC HE: Let's now look at some of the key operational developments from the quarter. Starting on the slide six, ZTOnline is currently our primary revenue driver and continue to achieve strong growth and acclaim since its launch in 2006. That said, *our third quarter 2007, ACU and PCU have declined slightly on the sequential basis as we institute a change in our game rule to discourage goal forming activities in June 2007.*
>
> * * *
>
> [ANALYST]: The first question is, could you elaborate a little bit more on the trends of your ACU and PCU throughout the third quarter, as well as if you may [chop] out some of the usual trends that you see in the fourth quarter to address some of the consent from some [key vote]. Number two, could you also tell a little bit about the feedbacks that you get from user during your closed beta testing for your new game Giant? Thank you.
>
> UNIDENTIFIED COMPANY REPRESENTATIVE: (Spoken in Chinese)
>
> ERIC HE: Okay, thank you, Eddie. I would direct this question to Ms. Liu, our President. Ms. Liu, please.
>
> WEI LIU: (Spoken in Chinese)
>
> UNIDENTIFIED COMPANY REPRESENTATIVE: (interpreted) Eddie, I will address your first question first, in terms of the trend of ACU and PCU in our third quarter. *As we know in the second*

> quarter '07, our ACU and PCU numbers have actually reached a high point. And in third quarter, the beginning of third quarter, we have seen a slight dip in terms of these two numbers and the reason is really because we introduced a change in our game rules to discourage gold farming activities we have seen and that actually caused ACU and PCU number dip.
>
> \* \* \*
>
> [ANALYST]: Thank you. I wonder if you could just back up a little bit to me and talk about the -- both the change in the game rules that discourage gold farming and I guess gold farming by that you mean sort of an experimental play or looking around or some kind, and why you did that, why that is good for the long term? I'm just curious if it doesn't discourage players to test the game and ultimately become payers. That's -- so, I just wanted some clarification on it, thank you.
>
> UNIDENTIFIED COMPANY REPRESENTATIVE: (Spoken in Chinese) Mr. Shi will answer the questions for you.
>
> YUZHU SHI: (Spoken in Chinese)
>
> UNIDENTIFIED COMPANY REPRESENTATIVE: (interpreted) First of all, *it's actually quite a popular phenomenon in China. There are [a] lot of gold farming companies. They are pretty pervasive actually existing in all kinds of games in China.* [Emphasis added.]

27. On this news, the Company's shares declined $3.78 per share, or over 25.4 percent, to close on November 20, 2007 at $11.10 per share, on unusually heavy trading volume. This closing price on November 20, 2007 represented a cumulative loss of $4.40 per share, or over 28 percent, from the value of the Company's shares at the time of its IPO just weeks earlier.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

28. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Giant Interactive's securities pursuant or traceable to the Company's November 1, 2007 IPO through November 19, 2007, and who were damaged thereby (the

10

"Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

29. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Giant Interactive's securities were actively traded on the New York Stock Exchange ("NYSE"). While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Giant Interactive or its transfer agent, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

31. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

32. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    (a) whether the federal securities laws were violated by defendants' acts as alleged herein;

    (b) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations

and management of Giant Interactive; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

33. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

34. The market for Giant Interactive's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Giant Interactive's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Giant Interactive's securities relying upon the integrity of the market price of Giant Interactive's securities and market information relating to Giant Interactive, and have been damaged thereby.

35. During the Class Period, defendants materially misled the investing public, thereby inflating the price of Giant Interactive's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

36.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Giant Interactive's financial well-being, business prospects-, and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Giant Interactive and its financial well-being, business prospects, and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

37.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

38.     During the Class Period, Plaintiff and the Class purchased securities of Giant Interactive at artificially inflated prices and were damaged thereby.  The price of Giant Interactive's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

### Applicability of Presumption of Reliance:
### Fraud On The Market Doctrine

39.     At all relevant times, the market for Giant Interactive's securities was an efficient market for the following reasons, among others:

(a)     Giant Interactive's securities met the requirements for listing, and was

        listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, Giant Interactive filed periodic public reports with the SEC and the NYSE;

(c)    Giant Interactive regularly communicated with public investors *via* established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Giant Interactive was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

40.    As a result of the foregoing, the market for Giant Interactive's securities promptly digested current information regarding Giant Interactive from all publicly-available sources and reflected such information in the price of Giant Interactive's securities. Under these circumstances, all purchasers of Giant Interactive's securities during the Class Period suffered similar injury through their purchase of the Company's securities at artificially inflated prices and a presumption of reliance applies.

**NO SAFE HARBOR**

41.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements, because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Giant Interactive who knew that those statements were false when made.

**FIRST CLAIM**
**Violation of Section 11 of**
**The Securities Act Against All Defendants**

42.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein only to the extent, however, that such allegations do not allege fraud, scienter or the intent of the defendants to defraud Plaintiff or members of the Class.  This count is predicated upon defendants' strict liability for making false and materially misleading statements in the Registration Statement.

43.     This claim is asserted by Plaintiff against all defendants by, and on behalf of, persons who acquired shares of the Company's securities pursuant to or traceable to the false Registration Statement issued in connection with the November 1, 2007 IPO.

44.     Underwriter Defendants owed to the holders of the securities obtained through the Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading.  Defendants knew, or in the exercise of reasonable care should have known, of the material misstatements and omissions contained in or omitted from the Registration Statement as set forth herein.  As such, defendants are liable to the Class.

45.     None of the defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

46.     Defendants issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public which were contained in the Registration Statement, which misrepresented or failed to disclose, *inter alia*, the facts set forth above.  By reason of the conduct herein alleged, each defendant violated and/or controlled a person who violated Section 11 of the Securities Act.

47.     As a direct and proximate result of defendants' acts and omissions in violation of the Securities Act, the market price of Giant Interactive's ADSs sold in the IPO was artificially inflated, and Plaintiff and the Class suffered substantial damage in connection with their ownership of Giant Interactive's securities pursuant to the Registration Statement.

48.     Giant Interactive is the issuer of the securities sold <u>via</u> the Registration Statement.  As issuer of the securities, the Company is strictly liable to Plaintiff and the Class for the

material misstatements and omissions therein.

49. At the times they obtained their shares of Giant Interactive, Plaintiff and members of the Class did so without knowledge of the facts concerning the misstatements or omissions alleged herein.

50. This action is brought within one year after discovery of the untrue statements and omissions in and from the Registration Statement which should have been made through the exercise of reasonable diligence, and within three years of the effective date of the Prospectus.

51. By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from the defendants and each of them, jointly and severally.

**SECOND CLAIM**
**Violation of Section 12(a)(2) of**
**The Securities Act Against All Defendants**

52. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53. This Count is brought pursuant to Section 12(a)(2) of the Securities Act on behalf of the Class, against all defendants.

54. Defendants were sellers, offerors, and/or solicitors of purchasers of the shares offered pursuant to the Giant Interactive Offering Registration Statement.

55. The Giant Interactive IPO Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts. The defendants' actions of solicitation included participating in the preparation of the false the misleading Registration Statement.

56. Defendants owed to the purchasers of Giant Interactive's securities, including

Plaintiff and other members of the Class, the duty to make a reasonable and diligent investigation of the statements contained in the IPO materials, including the Registration Statement, to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Defendants knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in the IPO materials as set forth above.

57.     Plaintiff and other members of the Class purchased or otherwise acquired Giant Interactive's securities pursuant to and/or traceable to the defective Registration Statement. Plaintiff did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Registration Statement.

58.     Plaintiff, individually and representatively, hereby offer to tender to defendants that securities which Plaintiff and other Class members continue to own, on behalf of all members of the Class who continue to own such securities, in return for the consideration paid for that securities together with interest thereon.  Class members who have sold their Giant Interactive securities are entitled to rescissory damages.

59.     By reason of the conduct alleged herein, these defendants violated, and/or controlled a person who violated Section 12(a)(2) of the Securities Act.  Accordingly, Plaintiff and members of the Class who hold Giant Interactive securities purchased in the IPO have the right to rescind and recover the consideration paid for their Giant Interactive securities, and hereby elect to rescind and tender their Giant Interactive securities to the defendants sued herein. Plaintiff and Class members who have sold their Giant Interactive securities are entitled to rescissory damages.

60.     This action is brought within three years from the time that the securities upon which this Count is brought was sold to the public, and within one year from the time when Plaintiff discovered or reasonably could have discovered the facts upon which this Count is based.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 19, 2007                                  Respectfully submitted,

BRODSKY & SMITH, LLC

By:*s/ Evan J. Smith, Esquire*
Evan J. Smith, Esquire
240 Mineola Boulevard
Mineola, NY 11501
Phone: 516-741-4799
Fax: 516-741-0626
Email: esmith@brodsky-smith.com

**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**
Richard A. Maniskas
D. Seamus Kaskela
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
(610) 667-7056 (fax)

**Attorneys for Plaintiff**